**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3927
_____

United States of America

v.

Devin Bullock,
                    Appellant

_____

On Appeal from United States District Court
for the Middle District of Pennsylvania
(D. C. No. 1-18-cr-00215-001)
District Court Judge: Honorable Christopher C. Conner
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on
December 7, 2020
_____

Before: McKEE, PORTER, and FISHER *Circuit Judges*

(Opinion filed:  January 29, 2021)

_____

OPINION[*]
_____

[*] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not
constitute binding precedent.

McKEE, *Circuit Judge.*

Devin Bullock appeals the district court's denial of his motion to suppress evidence purportedly obtained as a result of a *Terry* stop. Because the district court erred in concluding that officers had reasonable suspicion to stop Bullock, we will reverse the district court's denial of Bullock's motion to suppress, vacate the conviction, and remand for further proceedings.[1]

## I.

"We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and we exercise plenary review over questions of law."[2] "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause."[3] However, under the exception established in *Terry v. Ohio*,[4] "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."[5] "Any evidence obtained pursuant to an investigatory stop . . . that does not meet this exception must be suppressed as 'fruit of the poisonous tree.'"[6]

---

[1] The district court had jurisdiction over this criminal matter under 18 U.S.C. § 3231. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.
[2] *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006).
[3] *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002).
[4] 392 U.S. 1 (1968).
[5] *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).
[6] *Brown*, 448 F.3d at 244 (citing *Wong Sun v. United States,* 371 U.S. 471, 487–88 (1963)).

When determining whether an officer possessed reasonable suspicion for an investigative detention, we "must consider the totality of the circumstances, including the police officer's knowledge, experience, and common sense judgments about human behavior."[7] However, reasonable suspicion "unequivocally demands" that the detaining officer have "a particularized and objective basis" for suspecting the person detained of criminal activity.[8] The officers must be able to identify "specific and articulable facts"[9] that "raise a suspicion that the particular individual being stopped is engaged in wrongdoing."[10]

Where, as here, an officer makes a stop based on a tip, "the reasonableness of the stop . . . depends on the reliability of the tip itself."[11] Even when "one officer [] conducts a stop and frisk based on information provided by another officer," reasonable suspicion "require[s] the presentation of evidence by the government that the officer who issued the [original report] had reasonable suspicion, not simply that it was reasonable for the arresting officer [] to have relied on the [report]."[12]

The district court therefore erred in presuming that the tip at issue was reliable because it was relayed to the arresting officer by a "trusted" probation officer.[13] It should

---

[7] *United States v. Navedo*, 694 F.3d 463, 468 (3d Cir. 2012) (internal citation omitted).
[8] *Brown*, 448 F.3d at 246 (citation omitted).
[9] *Terry*, 392 U.S. at 21.
[10] *Navedo*, 694 F.3d at 468 (internal quotation omitted).
[11] *United States v. Nelson*, 284 F.3d 472, 481 (3d Cir. 2002).
[12] *Brown*, 448 F.3d at 248 (internal quotation omitted).
[13] App. 315.

instead have examined the reliability of the original source of the tip rather than assume that source was reliable merely because the ultimate messenger was.

We have previously identified five factors that indicate the reliability of a tip.[14] The tip here possessed few of those five indicia of reliability. The tip was not relayed in a face to face interaction so the officers could not appraise the tipster's credibility; and it is not clear that the tipster could be "held responsible if h[is] allegations turn[ed] out to be fabricated."[15] Moreover, the tip appears to have been "based solely on observation" rather

---

[14] *Brown*, 448 F.3d at 249–50. The five factors are:

> (1) The tip information was relayed from the informant to the officer in a face-to-face interaction such that the officer had an opportunity to appraise the witness's credibility through observation. (2) The person providing the tip can be held responsible if her allegations turn out to be fabricated. (3) The content of the tip is not information that would be available to any observer. . . . (4) The person providing the information has recently witnessed the alleged criminal activity. . . . [And] (5) The tip predicts what will follow, as this provides police the means to test the informant's knowledge or credibility.

*Id.* (internal citations and quotations omitted).

[15] *United States v. Valentine*, 232 F.3d 350, 354 (3d Cir. 2000). The record is not well developed as to what information Parole Officer Riegel knew about the tipster. At the suppression hearing, Officer Ishman admitted that he "d[id]n't know the informant," but suggested that Parole "Officer Riegle knew who the informant was." App. 300. Whether this alleged knowledge consisted simply of knowing the tipster's first name or whether Officer Riegel knew more and this knowledge would have been sufficient to hold the tipster accountable in case the tip was false is not clear. But even if the tipster could have been held accountable, this factor would not change our analysis here. *See, e.g.*, *Brown*, 448 F.3d at 250 (concluding that officers lacked reasonable suspicion even though the tipster "did not make an anonymous call" and "the police would certainly have been able to find him and hold him accountable had his tip proved to be inaccurate"). As we explain, considering the totality of the circumstances, the officers lacked reasonable suspicion to search Bullock.

than any inside knowledge.[16] In addition, the court had no way of knowing if the tipster had recently observed the alleged criminal activity. Finally, the tipster did not "predict[] what w[ould] follow."[17]

Absent these indicia of reliability, the officers needed something more to establish the specific and articulable facts suggesting criminality necessary for reasonable suspicion. "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable."[18] There was not sufficient additional information here.[19]

Once at the scene, officers witnessed Bullock perform only entirely legal activity; they saw Bullock unhurriedly walk out of the bar to his legally parked car and sit inside. Although Officer Ishman saw Bullock's shoulders momentarily dip beneath the dashboard when Officer Ishman shined his headlights into Bullock's car, Officer Ishman admitted at the suppression hearing that such movement was consistent with Bullock doing any manner of legal activities, such as stowing a cell phone or purse, and indeed it was. It was also consistent with Bullock attempting to retrieve keys that may have fallen to the floor. Such innocent actions cannot be pieced together in Lego-like fashion to

---

[16] *Nelson*, 284 F.3d at 484. "[W]here the tip contains information . . . that is of such a general nature as to be easily obtained by any observer, there is no reasonable suspicion." *Id.* at 480.

[17] *Brown*, 448 F.3d at 250 (Predictive information "provides police the means to test the informant's knowledge or credibility.") (internal quotation omitted).

[18] *Id.* at 251 (quoting *White*, 496 U.S. at 330).

[19] That the officers confirmed that Bullock's attire matched the tip's description does not establish reasonable suspicion here either. "A tip is not reliable merely because its description of the suspect's visible attributes prove accurate." *Id.* at 250 (internal citation omitted).

construct reasonable suspicion and justify a stop under *Terry*. Accordingly, the district court erred when it concluded that officers had reasonable suspicion to search Bullock.

## II.

For the reasons stated above, we will reverse the district court's denial of Bullock's motion to suppress, vacate his sentence of conviction, and remand to the district court for proceedings consistent with this decision.